**CITY OF HENDERSONVILLE, Appellant,**

v.

**HENDERSONVILLE UTILITY DISTRICT, Appellee.**

Court of Appeals of Tennessee, Western Section.

Oct. 10, 1973.

Certiorari Denied by Supreme Court March 4, 1974.

J. Dennis Sanders, Hendersonville, Ogden Stokes, Nashville, for appellant.

Carl Oldham, Hendersonville, William J. Harbison, Nashville, Charles Bone, Gallatin, for appellee.

NEARN, Judge.

In the early part of 1972 the City of Hendersonville annexed additional area to its corporate boundaries. In that newly annexed area, the Hendersonville Utility District, a public service utility corporation authorized and established by Chapter 248, Public Acts of 1937 and amended by Chapter 76, Public Acts of 1947, T.C.A. § 6–2601 et seq., operated and maintained the existent public water and sewer service. The Utility District's service area extended beyond the newly annexed area. The newly annexed area encompassed ninety per cent of the Utility District's service area.

The Legislature has made provisions for the orderly take-over by an expanding municipality of the facilities of a utility district by enactment of T.C.A. § 6–318 which is as follows:

"Municipal property and services.—Upon adoption of annexation ordinance or upon referendum approval of an annexation resolution as hereinabove provided, an annexing municipality and any affected instrumentality of the state of Tennessee, such as, but not limited to, a utility district, sanitary district, school district, or other public service district, shall attempt to reach agreement in writing for allocation and conveyance to the annexing municipality of any or all public functions, rights, duties, property, assets and liabilities of such state instrumentality that justice and reason may require in the circumstances. Provided, however, that any and all agreements entered into before March 8, 1955 relating to annexation shall be preserved. The annexing municipality, if and to the extent that it may choose, shall have the exclusive right to perform or provide municipal and utility functions and services in any territory which it annexes, notwithstanding § 6–2607 or any other statute, subject, however, to the provisions of this section with respect to electric cooperatives. Subject to such exclusive right, any such matters upon which the respective parties are not in agreement in writing within sixty (60) days after the operative date of such annexation shall be settled by arbitration with the laws of arbitration of the state of Tennessee effective at the time of submission to the arbitrators, and subsection (2) of § 23–501 shall not apply to any arbitration arising under §§ 6–308—6–320. The award so rendered shall be transmitted to the chancery court of the county in which the annexing municipality is situated, and thereupon shall be subject to review in accordance with §§ 23–513—23–515 and 23–518.

"If the annexed territory is then being provided with a utility service by a state instrumentality which has outstanding bonds or other obligations payable from the revenues derived from the sale of such utility service, the agreement or arbitration award referred to above shall also provide (a) that the municipality will operate the utility property in such territory and account for the revenues therefrom in such manner as not to impair the obligations of contract with reference to such bonds or other obligations, or (b) that the municipality will assume the operation of the entire utility system of such state instrumentality and the payment of such bonds or other obligations in accordance with their terms. Such agreement or arbitration award shall fully preserve and protect the contract rights vested in the holders of such outstanding bonds or other obligations."

By letter, on March 1, 1972, the City advised the Utility District that it was exercising its exclusive right under T.C.A. § 6–318 to provide utility functions and services in the newly annexed area. The letter also stated that since the City's annexed

area would include ninety per cent of the facilities and service area of the Utility District it, the City, would therefore be willing to assume the total utility operation for the Utility District, that is, the City would also operate that ten per cent of the system which was not in the newly annexed area. The letter expressed the desire that the matter be negotiated at the earliest possible date.

On June 17, 1972, the City filed its complaint in the Chancery Court of Sumner County alleging the facts as herebefore set out and averring that no response had been received from the March 1, 1972, notice and the Utility District was engaged in the "strategy of delaying this matter as long as they can by forcing the Plaintiff to bring this action." Further, that the Utility District was attempting to negotiate and expand its facilities and enter into contracts that would obligate the City.

The prayer of the complaint was for an order to immediately allow the City to assume absolute control and operation of the entire utility (water and sewer) system of the defendant. Also, the complaint sought an accounting of all revenues and expenditures of the Utility District as well as an injunction prohibiting the Utility District from entering into any contracts or making substantial expenditures without leave of Court.

In response to the complaint, the Utility District filed a motion to dismiss on the grounds that the suit was premature, as required statutory provisions had not been followed prior to suit. The Chancellor sustained the motion and dismissed without prejudice on those grounds and this appeal is the result of that action by the Trial Court.

It is admitted by the City that no agreement in writing between the parties at interest has been reached and that no arbitration of disputed issues has been had. It is the position of the City that such actions are not a prerequisite to the filing of the suit in this case. Of course, the position of the Utility District is exactly the opposite.

There are five Assignments of Error but only one issue and that is whether or not the Trial Court was in error in dismissing the complaint without prejudice.

It is the argument of the City that since the City by its offer will acquire *all* of the Utility District's assets and will assume all of the liabilities of the Utility District there is simply nothing to arbitrate as the Utility District is a public agency holding property by virtue of a trust in favor of the public and the City occupies the same status. Therefore, it is only the matter of a successor trustee assuming all the assets, whatever they might be, and liabilities, whatever they might be, of the first trustee. This being true, there can be no disputed issues which would be the subject of a proper arbitration. It is readily admitted, that if only a small portion of the Utility District was taken over by the City and the Utility District were to continue its operations in the non-annexed area, such things as the value of the facilities received, the division of liability for bonded indebtedness etc., would be the proper subject of arbitration.

We cannot agree with this argument. The statute does not limit its application to cases of a partial take-over. It should be noted that it is required by the statute that the parties "shall attempt to reach agreement in writing for allocation and conveyance to the annexing municipality of any or *all* public functions, rights, duties, property, assets and liabilities of such state instrumentality that justice and reason may require in the circumstances." (emphasis ours) The statute also contemplates possible disagreements between the parties on the matters to be attempted to be agreed upon for it further provides "any such matters upon which the respective parties are not in agreement in writing within sixty (60) days after the operative date of such annexation shall be settled by arbitration with the laws of arbitration of the state of Tennessee effective at the time of

**152**

submission to the arbitrators, and subsection (2) of § 23–501 shall not apply to any arbitration arising under §§ 6–308—6–320."

We do not here attempt to list or limit in any way items which could be in dispute and the subject of arbitration for such attempt would be beyond the scope of this appeal, but even when the annexing authority is to take over an entire utility district, the date of take-over might very well be the subject of disagreement and arbitration. In the instant case, that problem is present as well as others. For instance, the second paragraph of the statute provides for protection of the bond holders to be an item of the agreement or arbitration. Also, it must be borne in mind in this case that the City is going to, or so they say they will, provide services for members of the Utility District outside the annexed area. It would seem to us that "justice and reason may require" some sort of written agreement on this subject by the City and release of the Utility District trustees.

We hold that arbitration as set out in the statute is a necessary prerequisite to the filing of such a suit as this. We think it would be somewhat difficult for the Chancellor below to order a take-over of assets when a list of those assets is not before the Court and the Chancellor has no knowledge of what they actually are. This case involves more than underground pipes and fireplugs, it involved service equipment, office equipment, bonded indebtedness etc. As we view it, to hold any other way would defeat the purpose of the statute, which no doubt was to relieve the Court of having to supervise the dispute between the parties until some sort of agreement or award had been made through arbitration which the Court could either at that time approve or disapprove.

The decree below dismissing the complaint without prejudice is affirmed with costs of appeal adjudged against the City.

CARNEY, P. J., and MATHERNE, J., concur.